UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANDERSON TRUCKING
SERVICES, INC.,

              Plaintiffs,

v.

                                    **MEMORANDUM OF LAW
AND ORDER**
Civil File No. 22-02777 (MJD/LIB)

ANDREW HADLAND and
HIRSCHBACH MOTOR LINES, INC.,

              Defendants.

Ryan A. Olson and Sara Gullickson McGrane, Felhaber Larson, Counsel for Plaintiff.

Kendra D. Simmons, Fredrickson & Byron, Counsel for Defendants.

## I.   INTRODUCTION

This matter is before the Court on Defendants' Motion to Transfer Venue

Pursuant to 28 U.S.C. § 1404(a).  (Doc. 14.)

## II.   BACKGROUND

### A.   Factual Background

Plaintiff Anderson Trucking Services ("ATS") is a Minnesota Corporation

organized and headquartered in Minnesota with its principal place of business in

St. Cloud, Minnesota.  (Compl. ¶ 1.)  "ATS is a leading transportation and

1

shipping company throughout North America."  (Id. ¶ 5.)  ATS is a direct

competitor of Defendant Hirschbach Motor Lines ("Hirschbach") because both

compete for the same customers within the same market.  (Id. ¶ 7.)  Both

companies offer yard management services.  (Id.)

Defendant Hirschbach is an Iowa Corporation with its headquarters and

principal place of business in Dubuque, Iowa.  (Id. ¶ 3.)  Hirschbach provides

transportation services throughout the contiguous United States, including, but

not limited to, yard management and other onsite services, to customers in

Minnesota.  (Id.; Ex. B to Ryan Olson Decl. to Pl. Opp. to Mot. to Transfer Venue

at 20 (listing three Hirschbach job openings in St. Cloud, MN).)

Defendant Andrew Hadland ("Hadland") worked for ATS in St. Cloud as

a Vice President of Strategy and Acquisition from November 8, 2021 until

September 20, 2022.  (Compl. ¶¶ 8-9.)  Prior to accepting his role at ATS,

Hadland signed a "Non-Competition, Non-Solicitation & Non-Disclosure

Agreement" that included a covenant not to compete stating that Hadland

would not "directly or indirectly provide Services to or for any Competing

Company" for 18 months following the end of his employment with ATS.  (Id.

¶¶ 12-13; Ex. A to Compl. at 11, 13 ¶ 3) (emphasis omitted).)  When resigning on

September 20, 2022, Hadland notified ATS he was going to work for Hirschbach. (Compl. ¶ 16.)

Hadland's home is in Fort Wayne, Indiana. (Anderson Decl. to Pl. Opp. to Mot. to Transfer Venue ("Anderson Decl.") ¶¶ 2-3; Doc. 15 at 2, 3.)  When Hadland began working for ATS, he and ATS agreed that his principal place of employment was St. Cloud; he would secure living arrangements near ATS's headquarters; and for the first 34 months of his employment, he would work onsite in St. Cloud for two weeks (Monday of week one through Thursday of week two) and then work from his home in Fort Wayne for the next two weeks. (Anderson Decl. ¶ 2.)  During his employment with ATS, Hadland both drove and took commercial flights from Fort Wayne to Minnesota.  (Id. ¶ 3.)

On September 22, 2022, ATS sent Hadland a cease-and-desist letter regarding Hadland's employment with Hirschbach.  (Compl. ¶ 17; Ex. B to Compl.)  Counsel for the Parties spoke on the phone on September 23 and 29, 2022.  (Compl. ¶¶ 18-19.)  Hirschbach's counsel explained that Hadland was hired as General Manager of its "Spot Division," which has more than two locations.  (Id.)

3

Hadland went to work for Hirschbach and, according to Defendants, currently works fulltime at Hirschbach's headquarters in Dubuque, Iowa and spends weekends in Fort Wayne, Indiana.  (Doc. 15 at 3.)  "In the coming weeks," Hadland expects to "spend 50-60% of his working time at Hirschbach's Iowa headquarters, 20-30% of his working time travelling to . . . Spot locations, and the remaining 20-30% of his time working remotely from his home in Indiana."  (Id.)

## B.    Procedural History

On October 11, 2022, ATS filed a complaint in Stearns County, Minnesota District Court.  (Doc. 1.)  The Complaint asserts breach of contract against Hadland and tortious interference with contract against Hirschbach.  (Id.)  On November 1, 2022, Defendants removed the case to this Court.  (Id.)  Defendants now request transfer to the Northern District of Iowa.  (Doc. 14.)

## III.   DISCUSSION

### A.    Evidence Considered

"[T]he party seeking a transfer under [§] 1404(a) typically bears the burden of proving that a transfer is warranted."  Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997).  "Unlike a motion to dismiss, a request to transfer venue under § 1404(a) is not limited to a determination on the

4

pleadings." <u>Dial Tech., LLC v. Bright House Networks, LLC</u>, No. 13-CV-2995

MJD/TNL, 2014 WL 4163124, at *8 (D. Minn. Aug. 21, 2014).

> A court may consider undisputed facts presented through affidavits,
> depositions, stipulations, and other relevant documents. <u>See,</u>
> <u>e.g., One on One Basketball, Inc. v. Global Payments Direct,</u>
> <u>Inc.</u>, Civ. Action No. 13–2020(CKK), — F. Supp. 2d —, 2014 WL
> 1617707, at *3 (D.D.C. Apr.23, 2014) ("[W]hen evaluating motions to
> transfer under § 1404(a), a court should only consider undisputed
> facts supported by affidavits, depositions, stipulations, or other
> relevant documents."); <u>Lyngholm v. FedEx Ground Package Sys.,</u>
> <u>Inc.</u>, 827 F. Supp. 2d 912, 921 (S.D. Ia. 2011) (facts addressing
> materiality of witnesses' testimony and witnesses' accessibility with
> respect to forum to be provided "by way of affidavit or other
> information" (quotation omitted)); <u>Huang v. Napolitano</u>, 721 F.
> Supp. 2d 46, 47 n.2 (D.D.C. 2010) ("In reviewing a motion to transfer
> under 28 U.S.C. § 1404(a), a court may consider undisputed facts
> outside the pleadings.").

<u>Id.</u>

**B.    Section 1404(a) Standard**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and

witnesses, and in the interest of justice, a district court may transfer any civil

action to any other district or division where it might have been brought."  "In

general, federal courts give considerable deference to a plaintiff's choice of

forum." <u>Terra Int'l</u>, 119 F.3d at 695.  Courts give a plaintiff's choice of forum

deference even when the plaintiff originally filed suit in state court.  <u>Oien v.</u>

<u>Thompson</u>, 824 F. Supp. 2d 898, 905-06 (D. Minn. 2010).  When considering a

motion to transfer, the Court must consider three factors: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." Terra Int'l, 119 F.3d at 691.  However, "such determinations require a case-by-case evaluation of the particular circumstances at hand."  Id.  When deciding a motion to transfer venue, the Court is not bound by a "precise mathematical formula," but "enjoys much discretion."  Valspar Corp. v. Kronos Worldwide, Inc., 50 F. Supp. 3d 1152, 1155 (D. Minn. 2014).  Motions to transfer venue should not be freely granted.  Id. (citation omitted).

### C. Whether this Case Could Have Been Brought in the Northern District of Iowa

A civil action may be brought in--

(1)     a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)     a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3)     if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

The Court finds that this case could have been brought in the Northern District of Iowa because Hirschbach's principle place of business is in Iowa, ATS does not deny it does business in Iowa, and Hadland is currently employed in Iowa and either is or will be living in Iowa a minimum of 50-60% while he works onsite in Dubuque.  ATS does not make any real argument that the Northern District of Iowa would not have personal jurisdiction over Hadland.  (Doc. 25 at 5 n.1)  Thus, the Northern District of Iowa would have personal jurisdiction over the parties and there would be diversity of citizenship between the parties.

### D.    Convenience of the Parties and the Witnesses

When analyzing the convenience prong, courts typically consider "(1) the convenience of the parties, (2) the convenience of the witnesses – including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law."  Terra Int'l, 119 F.3d at 696.

### 1.    Convenience of the Parties

Defendants note that Dubuque is an approximately five-and-one-half-hour drive from ATS headquarters and a six-hour drive from Hadland's home in Fort Wayne, Indiana.  (Doc. 15 at 6.)  Defendants point out the following:

[T]here are no commercial flights in to or out of Dubuque (Iowa) Regional Airport, making commercial flights to St. Cloud, Minnesota impractical for witnesses based in Dubuque.  Any Hirschbach witnesses based in Dubuque, Iowa, would thus need to travel to airports in [other cities in Iowa, Wisconsin, or Illinois] for commercial flights.  Dubuque, Iowa and the Northern District of Iowa is thus a convenient central location, as Hadland would be significantly more burdened by any travel required to St. Cloud or Minneapolis, Minnesota, than to Dubuque, Iowa.

(Id.)  Defendants also argue that the Northern District of Iowa would likely be more convenient for Hirschbach employees who work at other Spot locations but does not explain where the other Spot locations are.  Defendants further assert that although Hirschbach does business in Minnesota, its contacts with the state did not give rise to this dispute.  (Doc. 28 at 2.)

This factor is neutral because transferring venue would merely shift the forum from the one most convenient for ATS to the one most convenient for Defendants without good reason.  See Valspar, 50 F. Supp. 3d at 1156.  Likewise, any expenses and inconvenience associated with travel would just be shifted from Defendants to ATS.  See Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC, 124 F. Supp. 3d 878, 885 (D. Minn. 2015) (finding travel expenses and costs associated with witnesses and evidence "essentially neutral" because each party anticipates such expenses no matter where a case is venued).  Thus, transfer is inappropriate because it would not provide a more convenient forum for this

8

dispute, just a forum likely equally convenient or inconvenient.  See Graff v.

Qwest Comms. Corp., 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999).

### 2.    Convenience of the Witnesses

The Parties agree that this factor is neutral because nonparty witnesses

have yet to be identified.

### 3.    Accessibility of the Records and Documents

Defendants argue that this factor weighs in favor of transfer because they

"expect that the bulk of any discovery will be directed at them and will focus on

documents, witnesses, and evidence located in Iowa and events that occurred in

Iowa."  (Doc. 15 at 5.)  They further assert that because Hadland and the

Hirschbach witnesses are based in Iowa and the alleged wrongful actions

occurred in Iowa, most, if not all, of Defendants' witnesses will be entirely or

mostly based in Dubuque and "at least one may require a subpoena."  (Id. at 6.)

This factor weighs against transfer.  Practically speaking, most, if not all,

documents exchanged during discovery in this case, which alleges breach of a

2021 contract, will be done electronically.  In addition, ATS will likely be asked to

provide just as many documents during discovery as Hirschbach since ATS's

contract and non-compete covenant are at issue.  Furthermore, ATS represents it

will conduct depositions of Defendants in locations that are convenient for

them—which Defendants admit will alleviate some of their burden—and that

Zoom depositions are always an option.

That the Court may have to issue a subpoena for one yet-to-be-identified

witness, does not overcome the deference the Court must show to ATS's choice

of venue.  "The party seeking transfer must clearly specify the essential witnesses

to be called and must make a general statement of what their testimony will

cover."  Oien, 824 F. Supp. 2d at 904.  Defendants have not done so.  Moreover,

Defendants have not complied with the evidentiary standards set forth by this

Court.  See Dial Tech, 2014 WL 4163124, at *8.  They merely make allegations

without providing citations to affidavits or the record to support their

allegations.  Finally, it is this Court's practice to conduct civil motion hearings via

Zoom.  Magistrate Judge Brisbois may also do the same.  D. Minn. LR 7.3(a).

### 4.    Location Where the Conduct Complained of Occurred

Defendants cite no evidence other than their location in Iowa to support

their argument that this dispute arises out of Dubuque, Iowa.  (Doc. 15 at 1.)

However, ATS does not argue that this factor weighs in favor of Minnesota.

Thus, this factor weighs slightly in favor of transfer.

**5.      Applicability of Each Forum State's Substantive Law**

Hadland's employment contract with ATS did not contain a choice of law

clause.  Thus, it is unclear what state's law will govern the contract at issue in

this case.  However, when considering a motion to transfer venue, "the general

view is 'that courts can just as easily apply the law of another state as easily as

their own.'"  Oien, 824 F. Supp. 2d at 907 (quoting Clergy Fin., LLC v. Clergy Fin.

Servs., Inc., 598 F. Supp. 2d 989, 995 (D. Minn. 2009)).

Despite this, Defendants argue that it was "completely within [ATS's]

control" to include choice of law and forum selection clauses in its employment

agreement with Hadland and ATS's "choice not to do so should impact the

weight the Court gives Plaintiff's arguments."  (Doc. 28 at 2 (citations omitted).)

This factor is neutral.  Whatever state law the Court or the Parties decide

controls, courts in either venue are competent to apply it.

**E.      Interests of Justice**

When analyzing the interest of justice, courts typically consider "(1)

judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to

the parties of litigating in each forum, (4) each party's ability to enforce a

judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the

advantages of having a local court determine questions of local law."  Terra Int'l,

119 F.3d at 696.[1]

### 1.   Judicial Economy

The parties provide dueling statistics to support their arguments regarding

which District could resolve this case sooner.  (Docs. 15 at 8; 25 at 15-16; 28 at 3-

4.)  However, the only real "District-to-District" comparison addresses the

practical issue of median time to disposition of civil matters.  Civil cases are

resolved an average of six months sooner here than in the Northern District of

Iowa:  7.4 months here as opposed to 8.0 months in the Northern District of Iowa.

(Doc. 25 at 16 (citing U.S. District Courts – Federal Court Management Statistics –

Profiles, U.S. COURTS, https://www.uscourtgov/file/45245/download (last

visited December 15, 2022).)   Therefore, this factor weighs against transfer.

### 2.   Plaintiffs' Choice of Forum

ATS is a Minnesota Corporation headquartered in Minnesota.  Minnesota

courts have "repeatedly found that deference to the plaintiff's choice of forum is

appropriate where the plaintiff resides in the chosen forum."  Travel Tags, Inc. v.

---

[1] The Parties each use different lists of factors to discuss these same interests.
(Docs. 15 at 8-11; 25 at 15-20; 28 at 3-4.)  The different lists cover the same general
interests and all the Parties' arguments are discussed in this order.

UV Color, Inc., 690 F. Supp. 2d 785, 795 (D. Minn. 2010).  Moreover, Minnesota

has a significant interest in providing a forum for parties seeking to remedy an

alleged breach of contract with its residents.  TempWorks Software, Inc. v.

Careers USA, Inc., No. CIV. 13-2750 (DSD/SER), 2014 WL 2117344, at *7 (D. Minn.

May 21, 2014).  This factor weighs against transfer.

### 3.  Comparative Costs to the Parties

Although the Parties do not separately address this factor, the Court notes

that both ATS and Hirschbach are large corporations and the relative expenses

associated with travel to either District is essentially neutral because they must

be borne by one of the Parties.  See Bae Sys., 124 F. Supp. 3d at 885 (addressing

travel expenses associated with discovery).  In addition, ATS states that Hadland

is a highly-compensated executive.  (Doc. 25 at 13 (citing Compl. ¶¶ 9, 32).)  The

Court has already explained how Hadland's travel expenses can be mitigated.

This factor is neutral.

### 4.  Ability to Enforce a Judgment, Obstacles to a Fair Trial, and Conflicts of Law Issues

These factors are not addressed by the parties and are neutral.  The Parties

do address a "Governing Law" factor, which they admit is neutral because there

is no governing law stated in the contract.  (Docs. 15 at 9-10; 25 at 19.)

> **5.** **The Advantages of Having a Local Court Determine Questions of Local Law**

Defendants assert that because ATS seeks injunctive and other relief against Hirschbach, an Iowa company, and Hadland, an Iowa employee, Iowa has a compelling public interest in having its courts hear this dispute.  Therefore, Defendants argue that this factor weighs in favor of transfer.  (Doc. 15 at 9.)

Because both states have an interest in providing a forum for resolution of disputes involving their citizens and both courts are competent to decide matters involving the law of any state, this factor is neutral.

> **F.** **Conclusion**

The majority of the factors in the analysis are neutral.  A transfer would only shift any inconvenience and costs between parties.  Given the deference the Court must apply to ATS's choice of forum, transfer is therefore inappropriate.

## IV.   ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) **(Doc. 14)** is **DENIED**.


Dated:  February 2, 2023                                    s/Michael J. Davis
                                                                        Michael J. Davis
                                                                        United States District Court